r. Thank you. Am I addressing the microphone. Okay. Thank you. May it please the court. My name is regular floor. Hearing for appellants. So that our construction. DCM Erectors Inc. Judgment predators. Available the old sky system sink. In the underlying case. Appellant. As a four and a half million dollar judgment. Against LVL. Against it. Executed. Successfully. In the court below. We know the facts as I understand this. You're only contesting whether or not consideration was paid. To allow for the property security interest. And you're conceding that if their security interest. You're conceding that it was perfected. You're simply saying that it isn't. Prior. Serious senior to yours. Because of the absence of consideration for it. Is that right? No, your honor. What the substance. Of our argument is. Is that. This court has the noble jurisdiction to review. On cross motions before. Cross motions here. For summary judgment. And what we are saying is. That the security. And indemnification agreement. Upon which century relies. Is an exquisite. Red herring. It is not truly in this case. Counsel. Counsel. Can I articulate your argument as I understood it. Because. I had a little trouble. But I think I understand it. But I want to make sure I'm on the same page. Okay. The definition of bond in this red herring agreement. You refer to the London guarantee agreement. Yes. Your position is that under paragraphs four and eight. The board bond. Capital B. Only. Applies to bonds issued. By London on his paper. That's correct. Number one. Irrespective. For this case. Position number two. Is that the word surety. With a capital S. Applies only to London. Right. That's correct. Position three. Is that paragraph nine. Which refers. To other possible. Issuers of bonds. Creates. Third party beneficiaries. But does not expand the definition of the word bond. It does not expand the definition of the word surety. Correct. So far. Okay. For. Paragraph 17. Of the. Red herring agreement. Says that indemnification. In other words. The indemnification. Quote. For loss or damage arising from the issuance of one or more. Bonds. Right. Correct. And then. And then. Your. Subsidy rate for the year. Next position. Is that the loss in this case. Did not come from a bond. But rather came from. Basically a reinsurance agreement. That they had with XL. And then finally. No. Finally. That under paragraph 20. The security interest is. Only covers losses. From a bond. And that there was no loss. Under a bond. As you define that term. Now isn't that really your argument. Yes. In part. Well. Let's see what. Your Honor. Which part is not your argument. No. I said that is. Half of the argument. All right. Well. Let me tell you. My understanding of the case. And maybe it's the same. References. But not as detailed. I thought you were simply arguing. Basically. That the fronting agreement. Does not count as a bond. And therefore. There's no. Superior interest. To yours. And I thought it. All boiled down to that. Is that right. That's correct. Security. That's correct. And the reason is this. The reason is very simple. You see. What. They purport. To rely upon. Is a fronting agreement. Which they claim. We put up our financial security. We ask these third parties to go out. Issue bonds. And when they have a loss in the bond. We pay them. Our security. And then we're subrogies. And we take that back. To. LBL. And LBL. Owes us an indemnification. Well that is fine. Except it's false. There is not one scintilla. Of evidence. In this case. That any bond. Issued by a third party. Was ever called. There's a security agreement. In the records. I understand the record. There's a security agreement. Which is incredibly broad. That St. Paul's. Issued. To LBL. And there is a. Policy of reinsurance. Between the St. Paul's. And XL. And a. Bond issued. By XL. LBL. Is that. Right so far. No. Listen. They say. To XL. Which is irrelevant. In the case. Those bonds are irrelevant. What. Which bonds. Bonds that XL issued. To. LBL are irrelevant. The XL. Any C. Bonds. Are totally irrelevant. To the case. Those bonds. Those bonds. Were never called. Yes. Let's start. Let's slow down for a minute. You said in your reply brief. Which confused me. A little bit. That there was no. Reinsurance agreement.     Do you. Do you. Maintain that position. Because there is no. Reinsurance agreement. Between XL. And London guarantee. The original. Bonding company. Do you. You said it right in your. Reply brief. That there's no. I underlined it. There's no. Reinsurance agreement. Here you say. Travelers. Has never alleged. That there was any. Separate reimbursement. For reinsurance agreement. With XL. That's what you say. Right on page. Three. Of your reply brief. Is that true. Is that true. You're looking at one. On page. Appendix. 420. Which is a. Reinsurance agreement. Between. It says. Reinsurance agreement. Between XL. Specialty insurance company. And. I'm sorry. Page what. Appendix. Page. 420. I'm looking at. Yes. Your honor. I said there is no. Service. Indemnity agreement. Which is separate from. Yeah. But that's. That's a. An operating agreement. That even if there is none. There is actually is one. But even if there were none. There is none. The obligation. Comes from the reinsurance agreement. Doesn't come from. Any. No there is. No there's no. There is no. The reason the service agreement is important. Is because they claim. They managed. All the. All the insurance. Claims. For XL. It's not in the record. Who's they? You said they managed. Who's they? The travelers. Or travelers. Travelers. It's not in the record. There is none. That's what I said. Not. Yeah but. I did not say reinsurance agreement. The obligation to pay. Even if there was no service agreement. Comes from a reinsurance treaty. This is a reinsurance treaty. And that's. That's where the obligation. Comes from. The obligation. The loss that. Well let's assume it's so. Why? It doesn't have anything to do with the case. There is no loss. That XL. Ever asserted. For the case. XL didn't sustain the loss. That's my point. Because they were reinsured. Century sustained the loss. Century. Not century. I mean. St. Paul's. Travelers. London. They. They. One of the three of them. Sustained the loss. I think what you're on. Reinsurance agreement. I think we're. We're getting. Perhaps a little confused. Which is a point of this. Entire matter. I do that. Confusion is the point. Yes. No. But there's nothing. If you look at. Maybe I just refer the court. Briefly. Maybe refer the court. Briefly to. Two. Thirty one. A. Of the record. And. That's. The. Affidavit. Explaining. Explaining.  Thirteen. Million. Dollar. Okay. Loss. Right. And. If you. Read it. Because. Closely. Drawn. Pleadings. Always. Have to be. Closely. Read. And. If you. Read it. You. Will see. That there is no place. In. This. Entire case. No place. Where. Travelers have said. We. Reimbursed. Anyone. For losses. Claimed. On a bond.      Does that appear. What they have. Said. Is that. We. Reimbursed. Anyone. For losses. Claimed. On a bond. Issue.  If you.  Closely. Drawn. Nuts and affidavits. Nuts and affidavits. But you have to read it. We. We. We. They pay us to read it. We. It doesn't. It doesn't say. I really think I'm offering school to reading. But we do read stuff too. Well, I'm sure it says. The amount of funds actually dispersed. Or caused to be dispersed. On behalf of LBL. And then it says. Or be. Some. Otherwise. Due. To the agreement. Nowhere in this case. Has anyone said. That any third party surety. Or travelers. Lost money on a job. And therefore. Has a claim. Under the security agreement. Let me ask you another question. Yes. Right. Assume we remanded it.       Was actually. The $13 million figure. Was actually. The $13 million figure. Was actually. The $13 million figure. Was actually. The $13 million figure. Was actually. Let's just assume that. I'm not. That we remanded it. They did discovery. They did depositions. And lo and behold. It was true. That $13 million. Was in fact. Advanced by. Travelers. London. St. Paul's. To. Pursuant to.     Would you say. I give up. I'm. I'm. I'm. I'm. I'm. I'm. I'm. I'm. I'm. I'm. I'm. I'm. I'm. I mean is that your argument. But I'm arguing that there is no supporting evidence for the agreement, that's correct. You're saying there's no debt? No, your honor, I'm not saying there's no debt. What I am saying is everyone keeps missing the admission against the interest they have made. The only thing we have said here is as a result of a bankruptcy, insolvency, and a new agreement with Laurentian Bank, they provided operating money for the general operations. And that that agreement was entered into in about the beginning of November, and shortly thereafter on the 4th of November is when they filed their UCC-1. They didn't file it six years late because they forgot to file it as a result of the security and identification agreement. They entered into an agreement, an operating agreement, which they conceived was for general operations. And then four days later, that's when they entered their UCC-1. Okay, Mr. LaFleur, we have your argument, and we're letting folks go for a little bit. You've gone over quite a bit, but I don't think we deserve time for a rebuttal on that. I did over there. Okay. So why don't we hear from Mr. McConnell, and we'll have you back in rebuttal. Yes, your honor. May I please take the court? Mr. Hugh McConnell on behalf of, I call it St. Paul, because that's what we work for, the Travelers Over London Guarantee. Would you keep your voice up, please? Yes. I'm sorry. That's a good fellow. I think the court has put its finger on what the issue is. Do you understand the argument? Well, the way I understood the argument is that the indemnity and security agreement did not trigger or did not constitute value given for the security interest if St. Paul caused to be issued bonds through a fronting carrier. That's what I understood the argument to be. Well, that the loss didn't come from a bond, and that in turn hinges on what the definition of bondage. Exactly. Because paragraph 17, the obligation is for losses or damages arising from a bond. Yes. Even though I'm not sure he accepts that argument, nevertheless, assuming that is the argument, what's your answer to it? My answer is that there was a bond, the XLNIC. It wasn't a bond issued by London. It was a bond issued by somebody else. Well, I go to the wording of the indemnity and security agreement. I go to paragraph 7, which defines the consideration for the present agreement. I know you rely on that, but consideration doesn't define bond. Paragraphs 4 and 8 taken together define bond. That provision, though, determines when is value given. And if value is given according to its terms by the issue of bonds by the surety or others, referred to in paragraph 9, directly or indirectly. Yes, but that's consideration for the indemnity's obligation. But that doesn't define bond. Bond is defined in paragraph 4 and paragraph 8 taken together. The argument is, in fact, made, even though not orally, was made in the brief, that the bond is, in fact, limited to bonds issued by the surety. And remember, you can take a security interest for anything in the world, but it has to cover a specific debt. For instance, I can give a security agreement for one debt I have to somebody, but it doesn't cover other debts I have to the same party. In other words, his position is that security conveyed in Article 20 doesn't cover this indebtedness, which appears to arise from a reinsurance agreement, rather than a bond itself issued by the surety. That was what the brief. I didn't understand that to be his agreement. What? I didn't understand that to be his argument. That's what I defined. I sort of went with what Judge McKee saw as the argument. I didn't pay as much attention to 7, because consideration doesn't define anything. It doesn't define the bond. No question the issuance of these other bonds is part of the consideration, but that doesn't deal with the language of disagreement. You have some good answers. What are they? We're in the agreement that's a defined bond or state clearly enough or broadly enough to include the funding agreement here to get to the concept of bonds in Paragraph 7. Well, let me suggest to you this. I can't. Paragraph 4, the definition of bonds. I feel your pain. Other forms of guarantee or obligation. That phrase in Paragraph 4 could not a reinsurance agreement be an other form of guarantee or obligation, which would fall within the definition of a bond. That's number one. Number two, Paragraph 7 says bonds that are issued directly or indirectly. And that's the argument you do make in your brief. Yes. And so you would say that even under the definition in 4 and 8, these bonds, the bond of XL was at least issued indirectly by the surety. Exactly. Indirectly by Paragraph 9B, any surety, joint or several, any reinsurance company, and any other surety procured by the surety. 9 doesn't help you there. 9 creates new beneficiaries. It doesn't change the definition of surety. No. Excuse me, Judge. I believe it refers in Paragraph 7, it refers to the issue of bonds by the surety or others referred to in Paragraph 9. So those are the others. Not to the definition of bonds. We're asking you whether or not that language in Paragraph 7, the word bonds, is defined either in Paragraph 7 or elsewhere in a way to include a reinsurance agreement. Never in my wildest dreams did I think that there's an issue about what is the bond. Repeat that, please. I can't hear you. I'm sorry, Judge. I did not understand in the least that the issue was what is a bond. There's a performance bond and a payment bond. This case arises out of. This brief argues that because the bond was not issued by travelers but was issued by XL, it doesn't meet. Look, the language is clear. Bonds covered by and during this present agreement applies to all bonds issued by the surety. And he's saying that the XL is not the surety. The surety is London. And the answer is that it was issued indirectly by the surety. Well, that's. St. Paul requesting XL through the fronting arrangement. So you rely on Paragraph 7 for the concept of direct or indirect issuance. Yes, exactly. I mean, the fact of the matter is. He doesn't make that argument. He makes it very clearly in his brief. It's one thing that is clear. I understood it to be an argument regarding consideration and value given. That was how I took it. How much money is actually involved here? It's not 13 million. No. 13 million. It's a million something, isn't it? I'll break it down for you. 13 million is the total amount of losses and expenditures on various bonds that St. Paul has written. Some by itself in Canada. Some through fronting. What's involved in this case? In this case is a judgment below for about a million and a half dollars. How much? 1.5 million. And you want the 1.5 million, all of which, but $1,000 has been ordered dispersed. We suggested that the judge hold that back because the argument was made that this court would lose its jurisdiction over the appeal. And we didn't want that. You didn't have to do that. It only applies in in rem. It doesn't apply to in persona cases. We thought we'd have a comfort zone for everybody and have that money held back. The irony is that this $1.5 million fund that's at issue was actually created in effect through the efforts of St. Paul because St. Paul funded the litigation, appeared at the litigation. They completed the project that litigation involved and was in fact the entity that was really, at the end of the day, stung by the default of LBL's subcontractor, APG. So St. Paul was definitely involved in this. And our kind of backup argument, I think the language of the indemnity and security agreement is clear, but our backup argument is that even if it weren't clear, you look at the conduct of the parties here. You look at how is their intent revealed by their conduct. And we have St. Paul funding the completion of the project, funding litigation, creating this fund, assuming all of the risk, and actually standing in effect as surety in fact on this job. Do you accept the proposition, it's called the UCC, that a security interest must relate to a specific debt? Do you agree with that? Yes. You don't issue it in abstract. It secures a particular debt. Yes, or category of debt. And we have to find an indebtedness under this agreement to travelers by LBL, right? Yes. And you would agree the indebtedness is defined primarily in paragraph 17. Judge, I think... I'll have to agree. I can't focus on it right now. The indemnitores undertake to indemnify the surety in full for any loss or damage that it may suffer arising from the issue of one or several bonds, or from the decision not to issue a bond. That's the debt that's created that's being secured in paragraph 20. And therefore, we have to find, or anybody has to find, that this indebtedness, that the indebtedness, the $14 million or $13 million, that that indebtedness arises from the issuance of one or more bonds. Yes. That brings us right back to the definition of what is a bond. And so we have to find that the reinsurance agreement, which is where the indebtedness really comes from, is in fact equivalent to the issuance of a bond by the surety. And I think the definition in 9b helps you with that argument. You have to read the entire agreement together. Or in direct and indirect in 7. Exactly. Which also then gets you to 9. But I also think you have to look at the practicalities of the business, which is St. Paul caused these bonds to be issued through XL, NAC, and other fronting sureties. 9b doesn't purport to give the surety more rights. It purports to give rights to other people other than the surety, because it's even captioned additional beneficiaries to the present agreement. I agree with that. The identity of the other sureties is. But this is not XL suing for money. This is not XL or some third party seeking to benefit from this agreement. This is the primary signatory seeking to benefit. That's correct. So 9 maybe doesn't have quite the relevance you suggest. It defines the directly and indirectly. No, that's 7 actually. But it refers to that. That's what I'm saying, Judge. Okay. When did St. Paul's become travelers? Since the trial below, probably within the last year and a half, I would think. A year and a half? I think so. I kind of lost track of the case. Because you would never know that St. Paul's was involved in this, according to the brief of your friend. That's correct. I mean, you have to pick one. I think below we refer to St. Paul's slash London. It's really London did all this. London started it off, St. Paul, then it was a name change. Can I ask you one more question? Of course, Your Honor. I read this agreement to be not just covering the American airline project, but rather a broader agreement that covers lots of different projects. The indemnity and security agreement. Yes. The English version is at 168A. Yes. I, of course, relied only on the French version. Of course. Come on, Monsieur. But I looked at the English version, too, just to make sure it was correct. And that version, that agreement, seems to cover lots of different projects. Yes, I believe so. Anything written on behalf of LBL. So there might be all kinds of different arrangements that this covers. I think there are, in the summary of claims, I think there may be some that show that there are bonds issued for other, with other funding carriers. Thank you. Okay. I will not address the evidentiary questions. I do not believe that Judge Du Bois abused his discretion by accepting the summary of claims or accepting the declaration. Thank you, Your Honor. I will be brief. We're dealing with a record here, and I believe Judge Arenas raised this issue of fronting agreements. No. Somebody did. McKee. Whichever. Me. I think it was you. Right. I just want to point out for the record that, in fact, the suggestion was made that these fronting agreements somehow promised to reimburse third-party charities, and that promise was by Travelers St. Paul London Guarantee. But it's a canard. It is untrue. As an example, because we're dealing with a record, I direct your attention to 512 of the record. The document is described in their brief as a fronting agreement where travelers undertook to fully reimburse a continental casualty company, which is the one that is the bulk of the companies that are listed in their wherever the losses came from. Again, a document plain on its face, which shows that continental casualty company agrees to reimburse Travelers London Guarantee for all bonds that Travelers London Guarantee write in That's what the document is. So we have to be careful when we read their record. And we have to take Travelers quite seriously when it describes what the money is owed for. And it says again that the money was paid, dispersed, somehow spent. But it does not say that any money was spent of the $13 million to reimburse a third party where losses suffered on bonds called or any bond it issued. It is a closely drawn affidavit. Further sayeth not. Thank you. Thank you. Thank you. We take the matter under advisement. Thank you also for your argument.